# Richmond

## POLLARD & BAGBY, INC., TRUSTEE, ET AL. V. CITY OF RICHMOND, ET AL.

March 8, 1943.

Record No. 2615.

Present, All the Justices.

The opinion states the case.

*Montague & Montague*, for the appellants.

*Horace H. Edwards, John P. McGuire, Jr., Williams, Mullen & Hazelgrove, Guy B. Hazelgrove* and *Ralph T. Catterall*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

By deed dated June 1, 1925, John R. Blair and wife conveyed to Pollard & Bagby, Inc., trustee, certain property located at the southwestern corner of Grace and Adams streets, in the city of Richmond, to secure a first lien debt of $60,000, evidenced by several notes made by Blair and payable to bearer, and a second lien debt of $5,750.

On November 10, 1931, Blair and wife conveyed the property to Harry Craver. This conveyance was subject to the deed of trust mentioned above, but expressly provided that the grantee did not assume any liability for the debts thereby secured. On August 24, 1939, Harry Craver, who was then a resident of Gloucester county, Virginia, died testate, leaving a large estate. Apparently he left sufficient personal estate to pay all taxes and other debts due by him.

In May, 1940, the city of Richmond filed in the court below a bill in equity alleging that city taxes assessed against the above-mentioned real estate were delinquent for the years 1933 to 1939, both inclusive, that they amounted, with interest and penalties, to approximately $7,000, and that the city had a lien on the land to secure the same. The prayer of the bill was that the property be sold to discharge this lien and to satisfy these taxes. Among those made parties defendant to the bill were the executors of the will of Harry Craver, deceased, the devisees in the will, Pollard & Bagby, Inc., trustee, and "unknown parties," the latter being the holders of the notes secured as the first lien under the deed of trust.

The executors and devisees under Craver's will filed answers which denied any personal liability on the estate

for the taxes, but offered no objection to the sale of the property for their collection.

Pollard & Bagby, Inc., trustee, filed an answer alleging that the first lien debt secured in the deed to it had been reduced to the principal amount of $50,000, and that several of the noteholders were represented by Pollard & Bagby Investment Corporation "as agent." This answer further alleged: " * * * this respondent does not know, but is advised, and alleges, that strict proof should be required in this cause" as to whether Craver's estate was liable for the taxes claimed to be due the city.

After the suit had been properly matured there was a decree of reference to ascertain the fee simple value, annual value, the name of the owner of the property mentioned in the bill, a statement of the taxes and other liens due thereon and their relative priorities, the holders thereof, and whether the necessary parties were properly before the court. In due time the special commissioner reported that the property had a fee simple value of $18,000, an annual value of $150, and was subject to taxes due to the city of Richmond for the years 1933 through 1940, both inclusive, amounting, with interest and penalties, to $7,509.04 as of December 1, 1940, which were a first lien thereon. The report also showed that the principal of the first mortgage had been reduced to $50,000, evidenced by various notes held by numerous parties, the majority of whose names were ascertained and listed.

The report further stated that while the answer of Pollard & Bagby, Inc., trustee, "raises the question as to the liability of the estate of Harry Craver to pay the taxes, the said answer was not by way of cross-bill and in the pleadings the question is not, therefore, properly raised, nor was your Special Commissioner requested to make a report thereon."

Pollard & Bagby, Inc., trustee, and others, excepted to the report, in substance, on the ground that the special commissioner should have reported that the taxes were a debt due by the estate which should be paid by it out of

the personalty before the city's lien was enforced against the real estate.

Before the court had passed on these exceptions, Pollard & Bagby Investment Corporation and certain of the other noteholders secured in the deed of trust, tendered a petition setting out the above facts and praying that the cause be recommitted to the special commissioner to ascertain and report whether or not the personal estate of Harry Craver, deceased, was sufficient to pay the taxes in question, and if so, whether the executors of the estate should be required to pay them out of the personal estate in their hands before the city of Richmond should be permitted to enforce its lien for taxes against the real estate in question.

Some months later the matter came on to be heard on the exceptions filed to the special commissioner's report and on the petition tendered. After the lower court had announced its decision that the exceptions should be overruled and the petition rejected, Pollard & Bagby Investment Corporation and the same noteholders who had tendered the petition, as above stated, tendered an answer and cross-bill to the original bill filed by the city of Richmond. In substance, the purpose and prayer of the cross-bill were the same as that of the petition which had been tendered and rejected. This answer and cross-bill was likewise rejected by the lower court.

From a decree overruling the exceptions to the special commissioner's report, rejecting the petition and the answer and cross-bill, and directing that the property be sold to satisfy the city's lien for taxes thereon, Pollard & Bagby, Inc., trustee, and certain of the noteholders have appealed.

Their contention is that the taxes assessed on the real estate in the name of Harry Craver are a personal debt due by his estate which should be paid out of the personalty before the real estate is sold, and that under the doctrine of marshaling assets the appellants had the right to compel that this be done. Hence, they say, the lower court erred in rejecting the petition and the answer and cross-bill which prayed for this relief.

The city contends that under various statutes it had the election of collecting its taxes either by enforcing its lien on the land or by asserting its claim against Craver's estate, and that having elected to pursue the former remedy in the present suit, it should not, in effect, be compelled by the appellants to pursue the other course.

Moreover, the city says, the satisfaction of its claim for taxes should not be delayed until the collateral matters between the appellants and the Craver estate are litigated and settled.

The Craver estate takes the position that while it is not liable for the taxes, that question is beyond the scope of the pleadings, was not decided by the lower court, and hence is not before us.

We agree with the contention of the city that under various statutes it is given alternative methods of collecting its taxes. For instance, under Tax Code, section 403, as amended by Acts 1938, ch. 92, p. 157, such taxes may be enforced "by warrant, motion, action of debt or assumpsit, bill in chancery or by attachment * * * , to the same extent, and with the same rights of appeal as now exist or may hereafter be provided by law for the enforcement of demands between individuals."

Under Code, section 2454, as amended by Acts 1936, ch. 431, p. 1024, the city is given a lien upon real estate for the taxes assessed thereon, and accrued penalties and interest, "prior to any other lien or encumbrance thereon." See also, Tax Code, section 251 (as amended by Acts 1930, ch. 411, p. 869; Acts 1938, ch. 293, p. 426; Acts 1940, ch. 379, p. 665); Charter of the City of Richmond, section 67 (Acts 1926, ch. 318, pp. 533, 574).

Under section 251 of the Tax Code, as amended, the city's lien for taxes "shall, in addition to existing remedies for the collection of taxes and levies, be enforceable by suit in equity, * * * ." See also, Charter of the City of Richmond, section 75 (Acts 1926, ch. 318, pp. 533, 576).

The prompt collection of taxes by a governmental unit is, of course, vitally necessary to the discharge of its func-

tions. Legislative recognition of this is evidenced by the several statutory methods, some of which are quite drastic (e. g., right of distress), which are provided for the collection of taxes. There is no statutory requirement that a governmental unit should adopt one method rather than the other. Consequently, we think, the city of Richmond, in the present instance, had the right to pursue whichever course it deemed most expeditious or advisable in the collection of the taxes due to it.

The fact that the taxpayer may have died leaving sufficient personal estate to discharge his taxes and other debts, ·as here, does not·alter the city's rights. While it is true, as contended by the appellants, that in the settlement of a decedent's estate the personalty is the primary fund for the payment of his debts, including taxes, to hold that the city must resort to the personalty before enforcing its lien on the land would deprive it of its right of election to pursue either course.

The holding in *Pugh* v. *Russell*, 27 Gratt. (68 Va.) 789, 800, that real estate taxes must be paid out of the personalty of a decedent before the tax lien on the land is enforced, was in 1876, and before either the Commonwealth or any of its political subdivisions had been given the right to enforce a tax lien by an independent suit in equity. *Marye* v. *Diggs*, 98 Va. 749, 37 S. E. 315, 51 L. R. A. 902. Until such right was given by the Acts of 1901, Ex. Sess., ch. 140, p. 148, amending Code of 1887, section 456 (with later amendments carried into Tax Code, section 251), the city, of course, had no election to pursue that remedy.

The present suit is a statutory proceeding in equity to enforce the city's tax lien on a particular piece of property. *Alexander*.v. *Commonwealth*, 137 Va. 477, 487, 488, 120 S. E. 296. The bill filed by the city alleges that it has a lien on the particular property to secure the taxes which have been assessed against it and have accrued thereon. This is not a general creditors' suit to settle Craver's estate or to subject his lands to the payment of his debts, as the appellants seem to think it is. No convening of the general

creditors of the Craver estate is necessary for the establishment of the city's claim. While those holding subordinate liens on this particular property are made parties defendant to the bill, this is for the purpose of properly disposing of the balance of the proceeds of the sale after the city's claim has been discharged.

The prayer of the bill is that this particular piece of property, and none other, be sold in satisfaction of the tax liens thereon. Whether this should be done is the only matter presented. Consequently, the execution of the decree of reference, the confirmation of the report, the sale of the property, and the proper distribution of the proceeds among the holders of the liens thereon, are within the scope of the pleadings and the purpose of the suit. After these things have been done the purpose of the suit will have been accomplished.

On the other hand, the matters which the appellants sought to inject into the suit by their petition and answer and cross-bill, which the court rejected, are collateral to and quite beyond the purpose of the city's original suit. By the petition and the answer and cross-bill, the appellants, as the holders of a lien, admittedly subordinate to the city's tax lien, in effect, sought to have the lower court adjudicate their rights against the deceased taxpayer. In substance, they ask the court to compel the Craver estate to discharge the city's lien on the real estate for their (appellants') benefit.

Since the city has no interest in the rights of these parties *inter sese*, the trial court quite correctly held that the settlement of the city's claim for taxes against the real estate ought not to be delayed pending the adjudication of this collateral controversy between the appellants and the Craver estate.

The appellants insist that, under the doctrine of marshaling assets, the city should be required to exhaust its remedy against the Craver estate before it should have the specific real estate sold to pay the taxes. Here the argument is, that while the appellants have a claim only against the specific

real estate for the satisfaction of their lien, the city has a claim both against the specific property and the Craver estate, and in this situation it should be required to pursue the latter remedy, which would leave the real estate free as security for the appellants' claim.

Aside from the fact that the determination of such a question is not within the scope of the city's bill, the contention is not sound. It is well settled that, in the absence of independent and separate equities, the doctrine of marshaling assets does not apply unless the litigants are creditors of the same debtor. *Blakemore* v. *Wise*, 95 Va. 269, 272, 28 S. E. 332, 64 Am. St. Rep. 781; *Savings & Loan Corp.* v. *Bear*, 155 Va. 312, 334, 154 S. E. 587, 75 A. L. R. 980; Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 4, section 1414, p. 1063; 35 Am. Jur., section 4, pp. 387-8.

In the case before us, while both the appellants and the city have claims on a single piece of real estate, they are not creditors of the same debtor. The city claims to be a creditor of Craver's estate (which the executors deny), but the appellants are creditors of Blair (Craver's grantor). They have no claim against Craver personally or against his estate.

Nor do the appellants claim that there is any existing independent equity in their favor which would require either the Craver estate or the city to exonerate the real estate for their (appellants') benefit.

If it be true, as the appellants claim, that the Craver estate is primarily liable to the city for the payment of the taxes on this particular real estate, and that they (the appellants) will be entitled to reimbursement by the Craver estate to the extent that the proceeds derived from the sale of the real estate are depleted in the payment of the taxes, such claim may be asserted by the appellants against the Craver estate in a separate and appropriate proceeding without delaying the city's collection of the taxes admittedly due to it. The payment of the city's claim out of the proceeds of the sale of the real estate will in no wise impair the rights, if any, of the appellants against the Craver estate.

The final contention of the appellants is that the lower court should have permitted the filing of either the petition or the answer and cross-bill, to the end that after the city's claim for taxes had been satisfied, the court, having jurisdiction of the necessary parties, could then have proceeded to do complete justice by settling the collateral controversy between the appellants and the Craver estate, thereby avoiding a second suit for that purpose.

While the court below, in the exercise of its sound judicial discretion, might have followed this course, in our opinion its refusal to do so was not reversible error.

The decree appealed from will be affirmed without prejudice to the right of the appellants to pursue in an appropriate proceeding such rights as they may have against the Craver estate.

*Affirmed.*