# CIRCUIT COURT OF ROANOKE COUNTY

Roanoke County

v.

Che Torry,
trustee in liquidation for
LWF Development, L.L.C., et al.

September 13, 2012

Case No. CL12-290

BY JUDGE ROBERT P. DOHERTY, JR.

Roanoke County hired a private law firm to collect its delinquent real estate taxes for an agreed fee of 20% of the taxes and related assessments actually recovered. Lawsuits were filed on behalf of Roanoke County pursuant to § 58.1-3965, et seq., Code of Virginia (1950), as amended, to sell the lands of the recalcitrant landowners in order to collect their unpaid taxes. One of the landowners delinquent in its Roanoke County real estate taxes was a limited liability company that had been dissolved by the State Corporation Commission. That tax debt is the subject of this lawsuit. The assets of the dissolved limited liability company, to include its real estate, are held by a Trustee in Dissolution, who is the principal Defendant in this action. Additional named Defendants are the lien holders of several deeds of trust and their respective trustees. Among the liens against this Roanoke County real estate is a first deed of trust in the amount of $225,000.00 and a credit line deed of trust in an amount in excess of 1.9 million dollars. The first deed of trust has been subordinated to the credit line deed of trust.

In order to protect its collateral, the Bank, who was the holder of the note secured by the credit line deed of trust, filed a motion to redeem the real estate prior to its sale pursuant to § 58.1-3974. The Bank objected to the attorney's fees charged for redemption and requested leave of Court to pay all of the taxes and fees owed, less the attorney's fees, in order to halt the majority of the ongoing interest charges, and thereafter to litigate the question of the attorney's fees. The Court authorized that procedure. The sale of the land has simply been continued generally awaiting a resolution of this issue. The land has not yet been redeemed pursuant to statute, and the tax lien continues to exist. Redemption will occur when Court approved attorney's fees and its resulting interest have been paid in full.

The evidence in this case from the Roanoke County Treasurer is that he, on behalf of Roanoke County, was aware that the attorney's fee cost of collecting the delinquent real estate taxes this year would entail more than three hundred hours at a rate of $225.00 per hour. That would have been a fee that Roanoke County would have had to pay, whether the tax was collected or not. He also considered the fact that 50% to 60% of the delinquent tax properties were valued at less than $100,000.00, and 30% to 40% were valued between $100,000.00 to $300,000.00. There were also a number of very small parcels that he referred to as "dog lots," that were valued between $1,000.00 and $3,500.00. He determined on behalf of Roanoke County that it made more business sense and was more economical for the county to enter into a contingent fee contract with the lawyer, paying him a commission on what he actually collected, rather than to pay him his time and hourly rate. The percentage used was the 20% maximum set forth in § 58.1-3916. That is the same rate of recovery they had used in their oral contracts with law firms for the past approximate twenty years.

Defendant Bank also filed an Answer and Counterclaim. The Counterclaim requested that the county's lawsuit to enforce its tax lien against the real estate be converted to a general creditor's suit. Its purpose would be to force a sale of the land so that the private rights of the creditors of the former landowner could be litigated and they be made whole. Roanoke County's position in all of this is that its requested attorney's fees are reasonable and that this lawsuit should not be converted into a general creditor's suit.

### Attorney's Fees

The proceeding to subject land to the lien of its delinquent real estate taxes is statutory. The authorization and direction necessary to complete such a lawsuit is contained in § 58.1-3965 to § 58.1-3975. It is referred to by the legislature as a Bill in Equity for the Sale of Delinquent Tax Lands. In accordance with Rule 3:1 and Rule 3:2 of the Rules of the Supreme Court of Virginia, a bill in equity has been converted to a civil action,

commenced with the filing of a complaint. No other change has been made to a bill in equity. The same equitable principles that were used in chancery causes before the reformation of the Rules of Court still apply when a complaint is filed requesting equitable relief. "Such proceedings shall be held in accordance with the requirements, statutory or arising at common law, relative to effecting the sale of real estate by a creditor's bill in equity to subject real estate to the lien of a judgment creditor. . . ." § 58.1-3967. This type of civil action is very similar to a creditor's bill in equity, but, because of its statutory requirements, it has some unique features not found in an ordinary creditor's bill.

The purpose of a creditor's bill is to subject the debtor's property to an existing lien or judgment. By statute in Virginia, the taxing authority is not required to obtain a personal judgment against a landowner before filing a proceeding to enforce its tax lien. The delinquent tax becomes a lien on the landowner's real estate at the moment of its delinquency. It is a priority lien and is superior to all liens earlier recorded. § 58.1-3340. A suit for the sale of delinquent tax lands is an *in rem* proceeding against the land, not a lawsuit for a personal judgment against the landowner.

As in any creditor's suit, upon the sale of the real estate, the costs of the legal proceeding and the land sale would be paid first, and, thereafter, the claims of the creditors according to their priorities. In the case of the sale of delinquent tax lands, "the former owner, his heirs, or assigns of any real estate sold under this article shall be entitled to the surplus received from such sale in excess of the taxes, penalties, interest, reasonable attorneys' fees, costs, and any lien chargeable thereon." § 58.1-3967. Since this is an equitable remedy, the Court determines the reasonableness of the attorney's fees. In making such a determination, the Court is mindful of the statutory dictates of § 58.1-3969 that states in part as follows:

> In any case in which the attorney representing the locality and the governing body thereof have failed to reach an agreement as to a salary or commission or other basis as compensation for the services of such attorney, the court in which any proceedings are brought under this article may allow from the proceeds of the sale of any such real estate such fee as the court shall deem reasonable and proper to the attorney representing any such locality in such proceeding.

The issue raised by the Bank concerning attorney's fees does not require a sale of the land, but rather arose during the exercise of the owner's right of redemption of real estate subject to a delinquent tax lien, in accordance with § 58.1-3965. In this instance, the statute directs that various costs of sale, to include a pro rata cost of the advertising and notice publication, as well as reasonable attorney's fees set by the Court, shall become part of

the tax. It is the intent of the legislature by allowing redemption to put the taxing authority in exactly the same position as it would have been had it sold the delinquent tax lands and recovered all of its costs, delinquent taxes, interest, attorney's fees, and any other assessments, while still allowing the taxpayer to retain his real estate without the burden of a tax lien.

Broken down to its lowest common denominator, the Bank's challenge to the attorney's fees charged by Roanoke County's lawyer is that there has been no hourly time records presented that can be verified by comparing it with the actual work done on this case. There was no expert testimony concerning the hourly rate or the time records. They contend that the lack of presentation of such evidence prevents the Court from determining the reasonableness of the attorney's fee claim. The argument is also made that, because Roanoke County did not pass an ordinance pursuant to enabling legislation contained in § 58.1-3958 to "impose upon each person chargeable with delinquent taxes or other delinquent charges fees to cover the administrative costs and reasonable attorney's or collection agency's fees actually contracted for," that they cannot now charge back their attorney's fees. The Bank further argues that, by charging a percentage of the recovery, the larger or more valuable lands are required to subsidize the tax collection on smaller and less valuable parcels of real estate. Additionally, there is an argument about the arithmetic used by the County's attorney. The arithmetic errors will be corrected. The Court sees that simply as a byproduct of being a lawyer and having attended law school.

Insofar as the arguments made by the Bank are concerned, there is no requirement that an expert testify concerning a lawyer's fee in every case. *Tazewell Oil Co. v. United Virginia Bank/Crestar Bank*, 243 Va. 94, 112 (1992). In this case, the evidence from the county Treasurer was clear and straightforward. He made a business decision. Rather than incur attorney's fees without a guaranteed result, he entered into an oral contract for a contingent fee. That had been the method of contracting with lawyers for real estate tax collection for approximately twenty years in Roanoke County. He based the amount of the fee on the legislatures direction in § 58.1-3958. Although he did not state the actual argument in his testimony, it was obvious when he recited the size of the landholdings in the various delinquent tax cases. The cost of litigation and resulting land sales to collect taxes from smaller or less valuable delinquent tax lands would exceed the amount of recovery if the lawyer were allowed to charge his usual time and hourly rate. Such a situation would tend to cause the county not to proceed against smaller delinquent taxpayers because it would be counter-productive. That would result in discrimination by the county against large landowners and destroy the egalitarian nature of tax collection.

The reasoning of the Bank that the county cannot charge an attorney's fee for the collection of delinquent real estate taxes because they did not pass the necessary enabling ordinance called for in § 58.1-3958 to allow

the delinquent taxpayer to bear the burden of the attorney's fees is not persuasive. That code section addresses attorney's fees in the collection of local taxes in a general manner. The code section addressing redemption of land by an owner, § 58.1-3974, and the related code sections directing the Court to proceed as if in a creditor's bill in equity are statutes dealing specifically with the sale of delinquent tax lands and the setting of attorney's fees. The principle of statutory construction to be used in such instances is "that when certain statutes address a subject in a general manner and other statutes address part of the same subject in a more specific manner, the differing statutes should be harmonized, if possible, and, when they conflict, the more specific statutes prevail." *Gilman v. Commonwealth*, 275 Va. 222, 230 (2008). Accordingly, the more specific statutes requiring the Court to determine a reasonable attorney's fee in the collection of real estate taxes prevails.

In making its decision as to the reasonableness of the attorney's fee, the Court is mindful of the previous directions of the Virginia Supreme Court, carefully summarized in *Holmes v. LG Marion Corp.*, 258 Va. 473, 479 (1999), as follows:

> When, as here, recovery of attorney's fees is authorized by statute, the fact finder must determine from the evidence the amount of the reasonable fees under the facts and circumstances of each particular case. The trier of fact must weigh the testimony of attorneys [and others] as to the value of the services by reference to their nature, the time occupied in their performance, and other attending circumstances, and by applying to it their own experience and knowledge of the character of such services.

(Citation omitted.)

The Court made all of those considerations in this case, finding that the Treasurer used good business sense for the benefit of the citizens of Roanoke County when he decided to use a contingent fee contract and pay a commission to the lawyer based on results, rather than on time and hourly calculations.

The Court finds that the oral contract entered into by Roanoke County and the private law firm to pay a fee of 20% of the taxes and related charges actually collected, whether such collection be by redemption, litigation, or otherwise, is reasonable. The lawyers should re-check their arithmetic and arrange for the Bank to make the necessary payment forthwith. The redemption can then be completed and the tax lien resolved.

## General Creditor's Suit

The counterclaim of the Bank is an anomaly. It asks the Court to convert the statutory proceeding in equity to enforce the county's tax lien on a particular parcel of real estate to a general creditor's suit. That would require the Court to deny their request for redemption and increase the amount of interest that would be owed on their unpaid taxes until all matters in controversy between the creditors of the estate of the dissolved L.L.C. are litigated, the property sold, and all matters involving the claims of those creditors other than the county were resolved. The citizens of Roanoke County would be deprived of their lawful real estate taxes from this parcel of land for an unknown, but historically lengthy period time. The matters injected into this statutory suit to sell delinquent tax lands by converting it to a general creditors suit "are collateral to and quite beyond the purpose of the city's [county's] original suit." *Pollard & Bagby, Inc., trustee v. City of Richmond*, 181 Va. 181, 188 (1943). The request in the Bank's counterclaim to convert this case to a general creditors suit is denied. This ruling does not prevent the Bank from filing a general creditors suit on its own or simply foreclosing on the real estate under the terms of its deed of trust.